## PACIFIC AMERICAN FISHERIES *v.* ALASKA.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 246. Argued November 24, 1925.—Decided December 7, 1925.

1. A graduated surtax on salmon canneries of five cents per case of the product packed on all cases in excess of 10,000 and not more than 25,000; ten cents per case on all from 25,000 to 40,000; fifteen cents per case on all from 40,000 to 50,000; and twenty-five cents per case on all in excess of 50,000, is within the taxing power conferred on the Alaska legislature by the Organic Act of August 24, 1912. P. 276.

2. This tax is not inconsistent with the provision of the Organic Act that the authority therein granted to the legislature to alter, modify and repeal laws in force in Alaska shall not extend to the game, fish and fur seal laws; which is coupled with the proviso that the restriction shall not operate to prevent the legislature from imposing other and additional taxes and licenses. P. 277.

3. *Semble* that the purpose of this restriction was to prevent the Territory from doing away with fish protection. *Id.*

4. In exercising its taxing power on canneries the legislature may consider collateral advantages of fish protection. *Id.*

5. The tax, by discriminating against large canneries in favor of small ones, does not contravene the Fifth Amendment; since classification of taxes by the amount of the corpus taxed is valid when, as here, the inequalities are based on intelligible grounds of policy. P. 278.

2 Fed. (2d) 9, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a judgment of the United States District Court in Alaska, in favor of the Territory, in an action to collect license taxes.

*Mr. Warren Gregory,* with whom *Messrs. E. S. McCord, A. E. Robertson, H. L. Faulkner* and *Blair S. Shuman* were on the brief, for petitioner.

The additional tax is a regulation of the catching of salmon, and therefore violative of the proviso in § 3 of

the Organic Act of Alaska. By this proviso Congress made it clear that it intended to retain jurisdiction over the excepted matters among which are the laws relating to fish. The Act of June 26, 1906, for the protection and regulation of the salmon fisheries of Alaska, (34 Stat. 478), was in full force when the Legislature passed the law now attacked. *Auk Bay Salmon Canning Co.* v. *United States,* 300 Fed. 907.

The regulatory character of the Act is shown by the following characteristics:

(a) A tax which is imposed in good faith as a revenue measure is never graduated upward as is this tax, and furthermore is based upon profits or income net or gross as is the Federal Income Tax. The tax, of course, does not fall upon a fishery, saltery, etc., simply as property or as an *ad valorem* tax, nor could it do so, nor would such a tax be valid, since it would not be based upon any valuation of such properties. It falls upon the person who conducts these plants. Assuming that the tax may properly differentiate as between these general classes, it must nevertheless bear equally upon all within a particular class. In the case of the fisheries alone is a second classification attempted; based, not upon the character or amount of the business done, but upon the number of canneries where the business is carried on. The inequality which bears upon salmon canners packing the same character of fish is demonstrable from the terms of the Act. This portion of the Act attempts to discriminate between a large cannery and a small one through the method of a graduated volume tax. The larger the pack in any one cannery, the higher the additional tax. Only one conclusion can be reached from this change in the legislative method. The Legislature was not by this additional tax trying to raise money; it was trying to stop the industry, or at least to regulate it.

(b) The tax on fish traps, found in subdivision h, had the same effect.

(c) At the same session, and on the preceding day, the Legislature passed a law attempting to establish a closed season for salmon in Alaska for a period of approximately twenty days during each summer. This act was considered in the *Auk Bay Case,* 300 Fed. 907, and declared invalid.

(d) The exemption of chums (subd. f) from the surtax is also significant. It is clear that the Legislature regarded chums as being a less valuable fish than the varieties subjected to the surtax, and less subject to extermination, and that therefore no additional restrictions upon their catch were necessary.

(e) The act requires each cannery to pay 1% of its net annual income, no allowance being made for income derived from activities of the company without Alaska. It is significant that no industry other than mining is required by the statute to pay any sort of an income tax directly or indirectly.

(f) The revenue raised by this statute alone is grossly in excess of the needs of the Territory. As this case comes up upon demurrer to the answer, all of the allegations of the answer in that regard must be taken as true. That the excessiveness of revenue obtained from the operation of a statute is to be considered in determining its constitutionality was held in *Commonwealth* v. *Alden Coal Co.,* 251 Pa. 134.

(g) All of the circumstances connected with this case tend to show that the Legislature intended to prohibit and to penalize rather than to tax for revenue. *Elmer* v. *Wallace,* 275 Fed. 86. *Alaska Fish Co.* v. *Smith,* 255 U. S. 44, is distinguishable; and any intimations contained in it with regard to the unimportance of the intent of the Legislature in passing an act must be regarded as having been overruled by *Bailey* v. *Drexel Furniture Co.,* 259 U. S. 20; distinguishing *Veazie Bank* v. *Fenno,* 8 Wall. 533, and *McCray* v. *United States,* 195 U. S. 27. See *Alaska Pacific*

*Fisheries* v. *Territory of Alaska,* 236 Fed. 52. That the court must look behind the form and language of tax statutes when deciding as to their validity see further: *St. Louis S. W. Ry.* v. *Arkansas,* 235 U. S. 350; *Collins* v. *New Hampshire,* 171 U. S. 30.

The question involved herein has not been decided either expressly or impliedly by previous decisions. *Alaska Pacific Fisheries* v. *Territory of Alaska, supra; Alaska Salmon Co.* v. *Territory of Alaska,* 236 Fed. 62; *Alaska Fish Co.* v. *Smith, supra; Haavik* v. *Alaska Packers Assn.,* 263 U. S. 510; *Auk Bay Salmon Canning Co.* v. *United States,* 300 Fed. 907.

The classification upon which the surtax is based is arbitrary and unreasonable and opposed to the due process clauses of the Fifth and Fourteenth Amendments. *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540. It does not bear equally upon all members of the same class, viz., " fisheries." Police control over the industry having been expressly withheld, tax classification must rest upon some reasonable basis of distinction. This distinction must be grounded upon revenue. From a revenue standpoint it is immaterial whether salmon be packed in one cannery or in twenty. On the right to create inequalities in taxation by artificial classification, see: *Cotting* v. *Kansas City Stock Yards Co.,* 183 U. S. 79; *Truax* v. *Raich,* 239 U. S. 33; *State ex rel. Wyatt* v. *Ashbrook,* 154 Mo. 375; *City of Los Angeles* v. *Lankershim,* 160 Cal. 800; *In re Dees,* 46 Cal. App. 656, 660, 661; *Fiscal Court* v. *F. & A. Cox Co.,* 132 Ky. 738; *Ex parte Franks,* 52 Cal. 606; *Ex parte Richardson,* 170 Cal. 68; *City of Seattle* v. *Dencker,* 58 Wash. 501.

In *Rast* v. *Van Deman,* 240 U. S. 342, and *Tanner* v. *Little,* 240 U. S. 369, the classification was sustained upon the power of regulation vested in the state legislature.

*Mr. John Rustgard,* Attorney General of Alaska, for respondent.

The limitation imposed by § 3 of the Organic Act is one of several affecting the broad legislative power conferred by § 9.   The federal fish laws in question, being in their nature purely restrictive, can be "modified, altered or amended," or otherwise interfered with, only by relaxing them, or hampering their enforcement.   No attempt has been made to do so.   Additional restrictions cannot be said to relax, or conflict with, prior restrictions.   *Alaska Fish Co.* v. *Smith,* 255 U. S. 44, is a clear pronouncement that the Legislature of Alaska has authority to use its taxing power not only to limit fishing but to stop it.   Why, then, may not the same power be employed in the same manner to limit or regulate canning?   In a still more recent case (*Haavik* v. *Alaska Packers Assn.,* 263 U. S. 510), this Court held that in the exercise of its taxing power the Legislature had authority to discriminate against non-resident fishermen and in favor of resident fishermen.

Conservation of the fisheries was the sole purpose of Congress in withholding from the Legislature the right to repeal or modify the fishing restrictions in force at the time the Organic Act was passed.   The federal fish laws merely represent the most liberal terms on which Congress would permit fishing in Alaska waters; the local Legislature was at liberty to enact as many more restrictions as it found necessary for the perpetuation of the Territory's main industry.   If the language employed be insufficient to dispel all doubt on this subject, the debate on the floor of the House, when the clause in § 3 of the Organic Act was under discussion, is surely ample for that purpose.   This dual authority is no novelty in our system of government.   It permeates nearly all of our institutions and has become recognized as salutary wherever practically available.   The principle is seen in the mining

laws; the use and occupancy of public lands, *McKelvey* v. *United States,* 260 U. S. 353; in interstate commerce regulations, *Carey* v. *South Dakota,* 250 U. S. 118; *Savage* v. *James,* 225 U. S. 501; regulations of migratory birds, *Carey* v. *South Dakota, supra;* inspection laws, *Savage* v. *James, supra.* See *Northern P. R. Co.* v. *North Dakota,* 250 U. S. 135. So, under the Eighteenth Amendment. *Vigliotti* v. *Pennsylvania,* 258 U. S. 403; *Kennedy* v. *United States,* 265 U S. 344; *Hixson* v. *Oakes,* 265 U. S. 254.

Section 9 of the Organic Act also, by reference, incorporates the Act of July 30, 1886 (24 Stat. 170, c. 818), into the limitations imposed upon the legislative powers. That act provides, *inter alia,* that the Legislature "shall not pass local or special laws in any of the following cases, that is to say: . . . The protection of game and fish." Ordinarily no one would deny that this is a recognition of the authority to protect game and fish so long as the laws enacted for that purpose are general and not local.

The Act of June 6, 1924, was a reasonably clear recognition by Congress that the Legislature had some regulatory authority over fisheries, that a dual authority over the subject did exist, and that this dual authority was designed to be continued in the future. The new fish law for Alaska is not essentially different in principle from the Migratory Bird Law of Congress. Both place the authority to prescribe regulations in the Department of Commerce and neither denies to States or Territory power to add further restrictions.

Regulation of canning is not regulation of fishing. There is certainly nothing in the statutes to indicate that it was the intent of Congress to deny to the Territory full police authority over the shore industries, whether the same be dependent upon the fish in the ocean, or otherwise.

If the police jurisdiction exists, the objection to the present excise tax on the ground that it is regulatory

must fall; for the police power may be exercised through the taxing power. *Hammond Packg. Co.* v. *Montana,* 233 U. S. 331. The classification by amount is not repugnant to the Fifth Amendment. *Brushaber* v. *Union P. R. Co.,* 240 U. S. 1; *McCray* v. *United States,* 195 U. S. 27; *Spreckles Sugar Ref. Co.* v. *McClain,* 192 U. S. 397; *Clark* v. *Titusville,* 184 U. S. 329; *Knowlton* v. *Moore,* 178 U. S. 82; *Stebbins* v. *Riley,* 268 U. S. 137; *Flint* v. *Stone Tracy Co.,* 220 U. S. 108; *Patten* v. *Brady,* 184 U. S. 608; *Magoun* v. *Ill. Trust & Sav. Bank,* 170 U. S. 283; *Maxwell* v. *Bugbee,* 250 U. S. 525. The purpose of the tax is not a matter for the courts. *Alaska Fish Co.* v. *Smith,* 255 U. S. 44; *Rast* v. *Van Deman & L. Co.,* 240 U. S. 342; *Veazie Bank* v. *Fenno, supra; McCray* v. *United States, supra; Flint* v. *Stone Tracy Co., supra; United States* v. *Doremus,* 249 U. S. 86.

The purpose of the members of the Legislature in enacting a statute is not a question of fact which, upon issues joined, must be tried before and passed upon by a jury. A demurrer to an immaterial or frivolous allegation does not render it either material or pertinent. The statute must be left to speak for itself.

The grading of the tax so as apparently to fall heavier upon the owner of a cannery producing a large pack than upon the owner of one producing a small pack is just, and fair, and reasonable.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a suit by the Territory of Alaska to recover from the petitioner, Pacific American Fisheries, license taxes alleged to be due upon cases of salmon packed by the defendant at four canneries named. The defendant in its answer set up that the territorial taxing act was contrary to the Act of Congress of August 24, 1912, c. 387, (§ 3,) 37 Stat. 512, creating a legislative assembly in the Territory of Alaska, and to the Constitution of the United

States. The Territory demurred; there was a judgment for the plaintiff and this was affirmed by the Circuit Court of Appeals. 2 Fed. (2d) 9. A writ of certiorari was granted by this Court. 267 U. S. 589.

The taxes in question were imposed by c. 101, § 2, subdivision 8th, Laws of Alaska, 1923, amending c. 31 of the Laws of 1921. By (c) of that subdivision salmon canneries, after a tax by (b) of ten cents per case, are charged an additional tax on a pack of kings, reds and sockeyes, counted together, at any one cannery, as follows: On all cases in excess of ten thousand and not more than twenty-five thousand, five cents per case; in excess of twenty-five thousand and not more than forty thousand, ten cents per case; in excess of forty thousand and not more than fifty thousand, fifteen cents per case; and on all in excess of fifty thousand, twenty cents per case. Similarly in (d) and (e) a tax of four and one-half cents per case is imposed on medium reds, cohoes, and pinks; with additional taxes for each increase of numbers as in the previous subdivision. By (f) chums are taxed three cents per case. The petitioner says that this graduated tax is inconsistent with the Act of Congress mentioned, which provides that the authority therein granted to alter, amend, modify and repeal laws in force in Alaska should not extend to the game, fish and fur seal laws, and presses this contention nothwithstanding the further proviso that this provision shall not operate to prevent the legislature from imposing other and additional taxes or licenses. The petitioner also says that the classification upon which the surtax is based is unreasonable and a denial of due process of law, contrary to the Fifth Amendment of the Constitution of the United States. No question is raised about the uniform tax of ten cents per case imposed by (b). That has been paid.

The petitioner offers various reasons to show that this tax is not what it purports to be but is an attempt to regu-

late fisheries, which, the petitioner believes, Congress has not given the Territory power to regulate. The answer alleges that it was known that the revenue from these taxes would exceed the appropriations and needs of the Territory, and from this and other things the conclusion is drawn that the taxes were levied with the intent of driving the defendant out of its business. But the premise could not be known, it only could be prophesied. If known the conclusion as to legislative intent would not follow; and if the intent were entertained, in the only sense in which it rationally could be imputed, that is, to discourage canning the larger amounts, the legislature lawfully might act with that intent. Fisheries were not the direct object of attack, but canneries. It would require a strong case in any event to invalidate a tax on things that the legislature had power to regulate because of its collateral reaction on something else. But here even as to fisheries the legislature is given power to tax. Any tax is a discouragement and therefore a regulation so far as it goes, and the most plausible reconciliation of this power with the restrictions upon amending or modifying the laws in force is that the only purpose of the restrictions was to prevent the Territory from doing away with all protection, in a shortsighted rush for fish. At least we must take it to be clear that the unlimited power expressly given may be exercised with consideration of collateral advantages and disadvantages. *Alaska Fish, Etc. Co.* v. *Smith,* 255 U. S. 44, 48. It could not be exercised, intelligently otherwise. The extent of the power is a question of specific interpretation not of general principle; and therefore we leave the many familiar cases that were cited, on one side.

It is not unworthy of notice that in § 9 of the Act of August 24, 1912, an earlier statute of July 30, 1886, c. 818, § 1, 24 Stat. 170, is taken up, in which the power of the territorial legislatures to pass laws for the protection of

game and fish is recognized, and also that the latest revision of the fish law by Congress was passed after the present tax law had been enacted and had been upheld by the District Court; that it provided that nothing therein contained should curtail the powers of the Territorial Legislature of Alaska, and that it showed no sign of dissatisfaction with the way in which those powers had been used. Act of June 6, 1924, c. 272, § 8; 43 Stat. 464, 467.

It is much pressed that the tax discriminates against large canneries in favor of small ones—this especially as contravening the Fifth Amendment and denying due process of law. Classification of taxes by the amount of the corpus taxed has been sustained in various connections heretofore. By way of specific answer it is pointed out by the Attorney General of Alaska that the size of the run of salmon cannot be foreseen; that a cannery must be prepared to its full capacity; that there always will be an irreducible minimum of expense to be borne whatever the size of the pack; that therefore a small pack may mean a loss and a larger one a profit, and that on these considerations the law justly may attempt to proportion the tax to the probable gains. The inequalities of the tax are based upon intelligible grounds of policy and cannot be said to deny the petitioner its constitutional rights.

*Judgment affirmed.*