# FREEMAN v. SMITH, Treasurer.

## No. 3040–A.

First Division. Juneau.
April 4, 1930.

H. L. Faulkner, of Juneau, for plaintiff.
John Rustgard, of Juneau, for defendant.

HARDING, District Judge.

The demurrer filed to the complaint in this case gives rise to a consideration of that part of section 3 of the Organic Act of the territory of Alaska passed August 24, 1912, 37 Stat. 512, which after extending the Constitution and laws of the United States to the territory and providing for the continuance in effect of certain laws of the United States, reads as follows: " * * * Provided, That the authority herein granted to the legislature to alter, amend, modify, and repeal laws in force in Alaska shall not extend to the customs, internal-revenue, postal or other general laws of the United States, or to the game, fish, and fur-seal laws and laws relating to fur-bearing animals of the United States applicable to Alaska, or to the laws of the United States providing for taxes on business and trade, or to the Act entitled 'An Act to provide for the construction and maintenance of roads, the establishment and maintenance of schools, and the care and support of insane persons in the District of Alaska, and for other purposes,' approved January twenty-seventh, nineteen hundred and five, and the several Acts amendatory thereof: Provided further, That this provision shall not operate to prevent the legislature from imposing other and additional taxes or licenses." 37 Stat. 512, see 48 U.S.C.A. § 24.

If the act of the territorial Legislature set forth in paragraph VI of the complaint is an act altering, amending, modifying, or repealing a fish law of the United States, as is alleged in the complaint, then it is void under the provisions of the Organic Act cited.

In determining this question, it is to be borne in mind, as stated by Justice Holmes in the case of Alaska Fish Salting & By-Products Co. v. Smith, 255 U.S. 44, 41 S.Ct. 219, 220, 65 L.Ed. 489, that, "The Acts must be judged by their contents not by the allegations as to their purpose in the complaint." No act of Congress which the alleged territorial act alters, amends, modifies, or repeals is pointed out in the complaint. The case of Auk Bay Salmon Canning

Company v. United States (C.C.A.) 300 F. 907, is relied on by the plaintiff as sustaining his contention, but in that case there is an obvious effort on the part of the Legislature to modify the closed seasons established by act of Congress.

■ All legislation affecting fish does not come under the exclusion of the Organic Act. This was clearly established in the Alaska Fish Salting & By-Products Company v. Smith Case, above cited, and Pacific American Fisheries v. Alaska (C.C.A.) 2 F.(2d) 9; Id., 269 U.S. 269, 46 S.Ct. 110, 70 L.Ed. 270.

The court is cognizant of the Acts of Congress approved June 14, 1906 (48 U.S.C.A. § 243 et seq.), June 6, 1924 (48 U.S.C.A. § 221 et seq.), June 18, 1926, (48 U.S.C.A. § 223a), and February 28, 1929 (48 U.S.C.A. § 235), pertaining to the taking of fish in Alaska. These acts were clearly passed for one purpose, and that was the conservation of fish, particularly salmon, in the waters of Alaska. Whether an act of the territorial Legislature aimed to assist in conservation of fish would, from that fact alone, be beyond the power of the Legislature need not be determined in this case.

Allegations of the complaint show that the method of taking salmon by trolling is a method which does not materially disturb the escapement of salmon to their spawning beds. To take the view that the few nonresidents who might give up trolling in Alaskan waters rather than pay the tax in question would affect the conservation of salmon in any but the slightest degree is not borne out by these allegations, and to ascribe to the Legislature the purpose of conserving salmon by any such legislation is entirely unwarranted. The legislation complained of does not affect the conservation of fish in fact to the extent of the legislation sustained in the two cases above cited would do. Alaska Fish Salting & By-Products Co. v. Smith; Pacific American Fisheries v. Alaska (C.C.A.) 2 F.(2d) 9; Id., 269 U.S. 269, 46 S.Ct. 110, 70 L.Ed. 270.

■ In determining the nature of the legislation attacked, we must look elsewhere than to the conclusion of plaintiff that it contravenes the Organic Act by altering, amending, modifying, or repealing a fish law of the United States. This being so, the statement of Justice McReynolds in the case of Haavik v. Alaska Packers' Association, 263 U.S. 510–514, 44 S.Ct. 177, 68 L.Ed. 414, that the territorial Legislature had authority under the terms of the Organic Act to impose the license tax therein in question, "unless, for want of power, Congress itself could not have laid them by direct action," applies with equal force to this case.

■ The question then arises as to whether or not the act involved herein (Laws 1933, c. 30) could not have been passed by Congress for the reason of some constitutional inhibition, and in this respect the case above cited, and this case, differ in two respects: First, in the amount of the tax involved; and, secondly, from the fact that there is a distinction in this case between nonresident fishermen. It must be primarily by reason of these two facts that it is alleged in the complaint that the act of the Legislature is unconstitutional under the Constitution of the United States, as "denying to the plaintiff his constitutional rights and particularly his right to the equal protection of the laws." That the legislation in question does not violate the provisions of section 2, article 4, of the Constitution, that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states, is established by the case of Haavik v. Alaska Packers' Ass'n, above cited, for the same reason as stated therein, viz. that we are not concerned with taxation by a state.

■ As the provision of the Constitution, with reference to equal protection of the laws is found in section 1, article 14, of the Amendments to the Constitution, and reads that "No State shall * * * deny to any person within its jurisdiction the equal protection of the laws," the same reasoning applies to that provision.

Therefore, if the tax in question is to be held void, it must necessarily be by reason of its contravention of article 5, the Amendments to the Constitution. In respect to that article, Mr. Chief Justice White, in the case of Brushaber v. Union Pacific R. R., 240 U.S. 1, 24, 36 S.Ct. 236, 244, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713, discusses the matter as follows:

"So far as the due process clause of the 5th Amendment is relied upon, it suffices to say that there is no basis for such reliance, since it is equally well settled that such clause is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause. Treat v. White, 181 U.S. 264, 21 S.Ct. 611, 45 L.Ed. 853; Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713; McCray v. United States, 195 U.S. 27, 61, 24 S.Ct. 769, 49 L.Ed. 78, 97, 1 Ann.Cas. 561; Flint v. Stone Tracy Co., supra, 220 U.S. 107, 158, 31 S.Ct. 342, 55 L.Ed. 389, 416, Ann.Cas.1912B, 1312; Billings v. United States, 232 U.S. 261, 282, 34 S.Ct. 421, 58 L.Ed. 596.

"And no change in the situation here would arise even if it be conceded, as we think it must be, that this doctrine would have no application in a case where, although there was a seeming exercise of the taxing power, the act complained of was so arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property; that is, a taking of the same in violation of the 5th Amendment, or, what is equivalent thereto, was so wanting in basis for classification as to produce such a gross and patent inequality as to inevitably lead to the same conclusion."

In determining the validity of the act questioned herein, according to the principles above cited, and bearing in mind the distinctions heretofore pointed out between the case in hand and the case of Haavik v. Alaska Packers' Ass'n,

supra, I will consider first the classification of fishermen as regards the methods of fishing provided for in the act. This classification plaintiff contends is so unreasonable and arbitrary as to deprive him of property without due process of law.

Paragraphs 9 and 10 of the complaint are evidently intended to establish this unreasonable and arbitrary classification. In considering these paragraphs in particular and the whole complaint on this point there is a striking scarcity of allegations of fact, as compared to conclusions of law and fact.

Paragraph 9 of the complaint concerns itself with the matter of classification between nonresident trollers and nonresident purse seine fishermen. The only allegations of fact therein are that on the average the purse seine fisherman catches in a season five to ten times the value of the fish caught by the troller within the territory of Alaska; that the purse seine fisherman takes the fish from the water by schools, while the troller taxes them individually; that the methods of taking care of the fish are different. Then the conclusion is set forth that the method of fishing by trolling is the most desirable method of fishing to all concerned, and especially to the territory of Alaska, a conclusion that the territorial Legislature is better qualified to determine than plaintiff.

Paragraph 10, which deals with the classification as between nonresident trollers and nonresident gill net fishermen, alleges the conclusion that the discrimination is not based upon any principles of justice or equality, and alleges the fact that the monetary value of the yearly average catch of nonresident trollers is less than the yearly .average catch of nonresident gill net fishermen, within the territory of Alaska.

 The complaint neither in these paragraphs nor anywhere else alleges that there are no other differences between fishing by trolling and by seining or by gill netting that would be material in determining the reasonable-

ness of the classification by the Legislature. If this were a conservation measure, the facts alleged would have more significance, but this is a tax measure, not a conservation measure, and the classifications should be determined in that light. Here the necessity for the revenue to the territory, the benefits derived by the territory from the activities of the various classes of fishermen, the benefits conferred upon the various classes of fishermen by the territory, and other considerations are involved. Are the facts alleged sufficient to establish a case of arbitrary classification, bearing in mind that it is incumbent upon the plaintiff to show such arbitrary classification? The court does not feel such to be the case, and the court does not feel that the absence of allegations of fact can be substituted for by mere conclusion, and is particularly impressed by this absence, since it is common knowledge that great differences do in fact exist in many ways between the various methods of fishing and particularly in their effect upon the operation of industry and business in Alaska. The seasons for trolling are much longer than the season for seining or gill netting; the equipment and boats used are materially different; regulations of the Department of Commerce relative to the various methods of fishing are different; the waters fished, generally speaking, are different; the kinds of salmon taken are, generally speaking, different; the uses to which the fish taken are put are different, in that the fish taken by trollers are usually mild cured, those taken by other means usually canned. The court therefore does not feel that the complaint shows, taking the few facts alleged as true, any arbitrary classification.

■ ■ Do the allegations in the complaint, then, establish the unconstitutionality of the act under the Fifth Amendment to the Constitution, by reason of the amount of difference between the tax on nonresident trollers and on resident trollers? The court is of the opinion that they do not. The allegations as to the profitableness or unprofitableness of the business, in the complaint, would show

trolling for salmon has not been profitable, either for residents or for nonresidents, but that fact alone would not make the tax in question invalid. It was said in Alaska Fisheries Company v. Smith, supra, 255 U.S. 44, page 48, 41 S.Ct. 219, 220, 65 L.Ed. 489, "Even if the tax should destroy business it would not be made invalid or require compensation," and on page 49 of 255 U.S., 41 S.Ct. 219, 220, 65 L.Ed. 489, of the same, "We know of no objection to exacting a discouraging rate as the alternative to giving up a business, when the legislature has the full power of taxation."

It must be borne in mind that the Supreme Court in the case of Haavik v. Alaska Packers' Ass'n, supra, has already upheld a tax based upon residence alone, wherein resident fishermen were taxed nothing and nonresident fishermen $5, and, further, that the Supreme Court in that case stated (263 U.S. 510, page 512, 44 S.Ct. 177, 68 L. Ed. 414) that they found nothing in the Constitution which prohibits Congress from favoring those who have acquired a local residence and upon whose efforts the future development of the territory must largely depend, and that in the same case it is stated that the Legislature would have the same right as Congress with reference to such legislation as we are considering.

At any rate this court does not feel that, under the showing of this complaint, it can declare void as violative of the Fifth Amendment to the Constitution, a revenue act of the territorial Legislature as being so unreasonable and arbitrary that it does not amount to taxation at all, merely because it extends to the extent of the amount of tax herein involved, a principle already upheld and sanctioned by the highest authority.

For these reasons, the demurrer in this case is sustained.