ALASKA CONSOL. CANNERIES v.
TERRITORY OF ALASKA.

(Circuit Court of Appeals, Ninth Circuit.
November 22, 1926.)

No. 4931.

1. **Constitutional law** ⊚⟂287—**Licenses** ⊚⟂7
(1)—Statute taxing canneries, made applicable to current calendar year, held not to impair obligation of "contracts" (Laws Alaska 1921, c. 31, §§ 2, 13, 14, and sections 1, 10, as amended by Laws 1923, c. 101, §§ 1, 2).

Laws Alaska 1921, c. 31, §§ 2, 13, 14, and sections 1, 10, as amended by Laws 1923, c. 101, §§ 1, 2, imposing license tax on canneries, and made applicable to current calendar year, *held* not unconstitutional, as impairing obligation of contracts, because it increased taxes on licenses previously issued; such licenses or provisional licenses not being "contracts."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contract.]

2. **Statutes** ⊚⟂263—**Taxation** ⊚⟂40(1), 58—
Statutes, and especially tax statutes, are presumed intended to operate prospectively, uniformly, and equally.

Presumption is that statutes, and especially tax statutes, are intended to operate prospectively, uniformly, and equally on all, but question is one of legislative intent.

3. **Licenses** ⊚⟂8(1)—Statute taxing canneries held retroactive (Laws Alaska 1923, c. 101, §§ 1, 2, amending Laws 1921, c. 31, §§ 1, 10).

Laws Alaska 1923, c. 101, §§ 1, 2, amending Laws 1921, c. 31, §§ 1, 10, imposing license tax on canneries and made applicable to current calendar year, *held* retroactive.

In Error to the District Court of the United States for Division No. 1 of the Territory of Alaska; Thos. M. Reed, Judge.

Action by the Territory of Alaska against the Alaska Consolidated Canneries. Judgment for the Territory, and defendant brings error. Affirmed.

J. A. Hellenthal and S. Hellenthal, both of Juneau, Alaska, for plaintiff in error.

John Rustgard, Atty. Gen., of Alaska, for Territory of Alaska.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

RUDKIN, Circuit Judge. This was an action to recover the balance due on certain license taxes imposed by the territory of Alaska, pursuant to chapter 101 of the Laws of 1923, on certain salmon canneries operated by the Alaska Consolidated Canneries. The act of 1923 amended two sections of a similar act of 1921 (chapter 31 of the Laws of 1921), and declared an emergency, so that a brief reference to the prior act becomes necessary to a proper understanding of the questions presented for decision.

Section 1 of the act of 1921 provided that any person, firm, or corporation prosecuting, or attempting to prosecute, certain lines of business, or who should employ certain appliances in the territory of Alaska, should apply for and obtain a license and pay for such license for the respective lines of business as therein provided. Then followed an enumeration of certain lines of business for which licenses were required and the amount of the license fee for each. Included in this enumeration was the business of salmon canning. The fee for the license was in some instances a fixed sum, but generally the amount of the tax depended upon the amount of the business transacted during the year, and was not ascertainable until the end of the year. To overcome this difficulty, section 2 of the act provided that, if the tax for the license applied for was a fixed sum, the amount of the license tax should accompany the application; but, if the amount of the tax was not a fixed sum, the applicant should state in his application that he agreed to pay the license tax, and would make a true return, and would pay to the treasurer such tax on or before the 15th of the next ensuing January.

Section 10 of the act declared all taxes levied pursuant thereto, together with penalties and accrued interest, a lien upon the real and personal property of the person, firm, or corporation liable therefor, paramount and superior to all mortgages, hypothecations, conveyances, and assignments. Section 13 repealed chapter 33 of the Session Laws of 1919, relating to the same subject, but with a saving clause providing that nothing therein contained should be construed to relieve any person, firm, or corporation from paying any tax, penalty, or interest accrued and owing under the provisions of the act repealed; but all such taxes, penalties, and interest should be paid, collected, and enforced in the same manner as the taxes provided for in the amendatory act. Section 14 provided as follows:

"Except as otherwise provided in this act, all licenses shall be issued for the calendar year, beginning on January 1st and ending on December 31st of each year, and where the tax is not a fixed sum, but is computed after the close of the year's business, it shall be computed on the basis of the business done during such calendar year, and all taxes for the current year shall be calculated upon the basis of the schedule adopted by this act."

Section 1 of the act of 1923 amended section 1 of the act of 1921 in certain respects

not material here, aside from the fact that the license tax on the business of salmon canning was materially increased. Section 2 of the act of 1923 extended the lien provided for in section 10 of the former act to the real and personal property used with the permission of the owner thereof in prosecuting the various industries or lines of business on which the license tax was levied. As already stated, section 3 declared an emergency, and that the act should take effect from and after its passage and approval.

Prior to the passage of the act of 1923, the Alaska Consolidated Canneries obtained what is styled provisional licenses to carry on the business of canning salmon at its different canneries in the territory during the year 1923, and agreed that at the close of the year it would file or cause to be filed with the treasurer of the territory true returns of the business transacted under the authority of the licenses applied for and would pay to the territory the license taxes prescribed by law. The Consolidated Canneries paid all license taxes due the territory on the basis of the schedule contained in the act of 1921, but refused to pay the additional taxes imposed by the act of 1923.

This action was brought to recover the difference between the amount of the taxes based on the schedule of 1923 and the amount of the taxes based on the schedule of 1921. Judgment was entered in favor of the territory in the court below, and the defendant has sued out the present writ of error.

[1] The plaintiff in error contends, first, that the Legislature of the territory lacked constitutional power to increase or change the amounts to be paid for licenses issued prior to the passage of the act of 1923; and, second, that the act of 1923 by its terms is not retroactive.

The first contention is without merit. "A license is merely a permit or privilege to do what otherwise would be unlawful, and is not a contract between the authority, federal, state, or municipal, granting it and the person to whom it is granted; neither is it property or a property right; nor is it taxation. It has been held, however, that a license tax involves a contract obligation to pay the specified compensation for the privilege." 37 C. J. 168. "The amount of a license fee or tax ordinarily may be increased or decreased at any time in the discretion of the body imposing it. Where a city has full power to tax an occupation, it may increase the rate on a particular class of persons engaged therein at any time before the expira-

16 F.(2d)—17

tion of the period for the enforcement of the tax, even though such increase is made after the tax first levied has been paid. It has been held that the amount of the license fee may be increased pending an application for a license, and the applicant be compelled to pay the increased fee." Id. 189.

In Patton v. Brady, Executrix, 184 U. S. 608, 619, 22 S. Ct. 493, 497 (46 L. Ed. 713), the court said:

"It is insisted: 'That Congress may excise an article as it pleases so that the excise does not amount to spoliation or confiscation. But that having excised it, it has excised it, and the power is exhausted. It cannot excise a second time.' But why should the power of imposing an excise tax be exhausted when once exercised? It must be remembered that taxes are not debts in the sense that having once been established and paid all further liability of the individual to the government has ceased. They are, as said in Cooley on Taxation, p. 1: 'The enforced proportional contribution of persons and property, levied by the authority of the state for the support of the government and for all public needs,' and so long as there exists public needs just so long exists the liability of the individual to contribute thereto. The obligation of the individual to the state is continuous and proportioned to the extent of the public wants. No human wisdom can always foresee what may be the exigencies of the future, or determine in advance exactly what the government must have in order 'to provide for the common defense' and 'promote the general welfare.' Emergencies may arise; wars may come unexpectedly; large demands upon the public may spring into being with little forewarning; and can it be, that having made provision for times of peace and quiet, the government is powerless to make a further call upon its citizens for the contributions necessary for unexpected exigencies.

"That which was possible in fact existed. A war had been declared. National expenditures would naturally increase and did increase by reason thereof. Provision by way of loan or taxation for such increased expenditures was necessary. There is in this legislation, if ever such a question could arise, no matter of color or pretense. There was an existing demand, and to meet that demand this statute was enacted. The question, therefore, is whether Congressional provision must reach through an entire year and at the beginning finally determine the extent of the burden of taxes which can be cast upon the citizen during that year, with the result that

if exigencies arise during the year calling for extraordinary and unexpected expenses the burden thereof must be provided for by way of loan, temporary or permanent; or whether there inheres in Congress the power to increase taxation during the year if exigencies demand increased expenditures. On this question we can have no doubt. Taxation may run pari passu with expenditure. The constituted authorities may rightfully make one equal the other."

We have here no such exigency as war, but the question whether the schedule of 1923 should be made applicable to licenses for that year, where the amount of the tax was not ascertainable at the time the provisional license was applied for and granted, was one of legislative discretion and expediency, over which the courts have no control.

Again, in Wisconsin & Michigan Ry. Co. v. Powers, 191 U. S. 379, 387, 24 S. Ct. 107, 108 (48 L. Ed. 229), the court said:

"But this is a somewhat narrow and technical mode of discussion for the decision of an alleged constitutional right. The broad ground in a case like this is that, in view of the subject matter, the legislature is not making promises, but framing a scheme of public revenue and public improvement. In announcing its policy and providing for carrying it out it may open a chance for benefits to those who comply with its conditions, but it does not address them, and therefor it makes no promise to them. It simply indicates a course of conduct to be pursued, until circumstances or its views of policy change. It would be quite intolerable if parties not expressly addressed were to be allowed to set up a contract on the strength of their interest in and action on the faith of a statute, merely because their interest was obvious and their action likely, on the face of the law." See, also, Continental Oil Co. v. Walker (C. C. A.) 285 F. 729.

It is clear, therefore, that the provisional licenses were not contracts, and, if not, no question of their impairment is involved. The Attorney General contends that Alaska is not a state and that the constitutional provision against impairing the obligation of contracts has no application. Alaska is not a state, but it does not follow from this that its Legislature may pass laws impairing the obligation of contracts. That question, however, is not before us.

[2, 3] The second contention is equally without merit. In Pacific American Fisheries v. Territory of Alaska (C. C. A.) 2 F. (2d) 9, we held that certain canneries operating in Alaska during the year 1923 were subject to the tax imposed by the act passed in that year. Indeed, the identical question here presented was before the lower court in that case, because it was averred in one of the affirmative defenses that the license under which the defendant was then operating was applied for and granted prior to the passage of the act of 1923. A demurrer to this affirmative defense was sustained, and the ruling on the demurrer was not assigned as error in this court, so that the question was not discussed or considered. But the fact is somewhat significant that able counsel representing the defendant in that case did not deem the question of sufficient importance to urge it here, though nearly $10,000 was involved. But, in any event, it was there specifically held that some of the canneries operating in Alaska were subject to the law enacted in that year, and to now hold that the decision has no application to canneries operating under licenses granted before the passage of the act would be to create or permit of a discrimination which the Legislature manifestly never intended. Of course there is a presumption that laws, and especially tax laws, will have a prospective operation only; but there is a like presumption that they are intended to operate uniformly and equally upon all, and in the end the question is one of legislative intent.

Again, section 14 of the act of 1921, which is now a part of the act as amended, expressly provides that all licenses shall be issued for the calendar year beginning January 1 and ending December 31 of each year, and where the tax is not a fixed sum, but is computed after the close of the year's business, it shall be computed on the basis of the business done during that year, and all taxes for the current year shall be calculated upon the basis of the schedule adopted by this act. Furthermore, the schedule contained in the act of 1921 was superseded and repealed by the schedule contained in the act of 1923, before the taxes for the latter year could be ascertained or collected, and in the absence of a saving clause it is very questionable whether any tax could be imposed or collected under the act of 1921 after the passage of the act of 1923. Cooley on Tax'n (3d Ed.) 21. The emergency clause may throw some light on the question of legislative intent, though perhaps it would make no great difference to the revenues of the territory whether the act became operative upon its passage and approval, or at the expiration of 90 days thereafter. Upon a full consideration of the entire case, we are convinced that the Legislature intended that taxes for

1923 should be calculated or computed on the basis of the schedule adopted for that year, where the taxes were not a fixed sum, and that, as thus construed, the act is free from constitutional objection.

Other questions discussed in the briefs are foreclosed by our decision in Pacific American Fisheries v. Territory of Alaska, supra, affirmed on certiorari, 269 U. S. 269, 46 S. Ct. 110, 70 L. Ed. 270.

The judgment is affirmed.