### TERRITORY OF ALASKA, by OLSON, Treasurer, v. HAWKINS.

No. 4298.

District Court of Alaska. Fourth Division. Fairbanks.

Sept. 18, 1939.

---

*Bryant v. Lindsay, 94 N.J.L. 357, 110 A. 823; Yosemite Lumber Co. v. Industrial Acc. Comm., 187 Cal. 774, 204 P. 226, 20 A.L.R. 994.

576

James S. Truitt, Atty. Gen., and Charles E. Taylor, of Fairbanks, for plaintiff.

Julien A. Hurley, of Fairbanks, for defendant.

PRATT, District Judge.

1.  Chapter 20, Session Laws of Alaska 1937, is as follows:

"An Act To provide for a tax on mines and mining and to repeal Subsection 14, of Section 3138 of the Compiled Laws of Alaska, 1933, as amended by Chapter 74, of the Session Laws of Alaska, 1935.

"Be it enacted by the Legislature of the Territory of Alaska:

"Section 1. Any person, firm or corporation, prosecuting or attempting to prosecute, or engaging in the business of mining in the Territory of Alaska, shall apply for and obtain a license and pay for such license for the said business of mining.

" 'Mining' as used in this Section, means any operation by which valuable metals, ores, minerals, asbestos, gypsum, coal, marketable earth or stone, or any of them, are extracted, mined or taken from the earth.

"The license tax on mining, with the exception of the mining of gold, platinum, palladium, osmium, irridium and any other metal or mineral belonging to the platinum or palladium group, shall be as follows:

"Upon all net income:

| | |
|---|---|
| Not over $10,000 | ¾% |
| Over $10,000 and not over $20,000 | 1¼% |
| Over $20,000 and not over $100,000 | 1¾% |
| Over $100,000 and not over $150,000 | 3 % |
| Over $150,000 and not over $250,000 | 4 % |
| Over $250,000 and not over $500,000 | 5 % |
| Over $500,000 and not over $750,000 | 6 % |
| Over $750,000 and not over $1,000,000 | 7 % |
| Over $1,000,000 | 8 % |

"By 'net income' is meant the cash value of the output of the mine, or mining operation, less the following deductions, viz.: (a) actual operating expenses; (b) repairs actually made; (c) royalties actually paid; and (d) by way of depreciation, 10% of the actual cost of permanent improvements actually made during the calendar year in, on, or about and to the benefit of the mine during the calendar year; provided, however, that said 10% depreciation on said cost may be taken not only during the calendar year in which the improvement is actually made but also during each of the nine calendar years immediately following the calendar year in which the improvement is actually made, until a total of, but not in excess of, 100% depreciation, at the rate of 10% per calendar year, is taken for said improvement; provided further, however, that no

deduction shall be made or taken, as depreciation, or otherwise, on, of or for any betterment or improvement, or the cost thereof, which betterment or improvement was made prior to January 1, 1937; no deductions shall be made on account of depreciation of any mine, mining operation, ore reserve, equipment, machinery, or otherwise, except the aforesaid 10% depreciation on cost of improvements, actually made, as hereinbefore provided, nor shall any deduction be made for interest on bonds or on money borrowed, or other taxes paid. Provided, further, that the lessee of any mine or mining operation, in order to receive credit for royalties paid, must give, in his return of his own taxes hereunder, the name and address of the person or persons, association or associations, company or companies, to whom such royalties were paid and the amount of money or the percentage of the gross output paid to each such person, association or company.

"Where mining operations are conducted in two or more places by the same person, association or company, or affiliated association or company, such operations. shall be treated as a single mining operation and the tax hereunder shall be computed upon the aggregate income derived from all such mining operations; provided further, that the lessor of any mine operated under a lease shall be deemed to be engaged in mining within the provisions of this Act and the royalties received by him, shall be deemed to be the net income hereunder of his said mining operations, and, where such lessor receives royalties from more than one mine or mining operation, the tax, payable hereunder by such lessor, shall be computed upon the aggregate royalties received by such lessor from all such mines or mining operations as though they constituted a single mining operation.

"Gold, Platinum, Palladium, Osmium, Iridium and any Other Metal or Mineral Belonging to the Platinum or Palladium Group. The license tax on all gold, platinum, osmium, iridium and any other metal or mineral belonging to the platinum or palladium group produced in any mine

or mines in the Territory of Alaska, shall be 3% upon the cash value of the gross production in excess of Ten Thousand Dollars ($10,000.00).

"By 'gross production' is meant the total cash value of all of the products taken from any mine or mines.

"Section 2. Sub-section 14, of Section 3138 of the Compiled Laws of Alaska, 1933, as amended by Chapter 74, of the Session Laws of Alaska, 1935, is hereby repealed.

"Approved March 4, 1937."

Subsection 14 of Section 3138, Compiled Laws of Alaska 1933, as amended, which was repealed by said Chapter 20, contained provisions for a license tax on the business of mining upon the basis of the net income of a mine and Sections 3140, 3141 provided that the license tax was to be based upon the value of the annual recovery from mines, which was required to be reported to the Treasurer of Alaska, and the tax to be due December 31st of each year and payable by the 15th of the following January.

The complaint in this action was filed May 4, 1939, and was based upon Chapter 20, S.L.A.1937. It contained two causes of action: The first cause of action alleges that the defendant, during the calendar year of 1937, operated certain mining property and mined gold therefrom to the value of $66,945.79, without having procured or paid for a license as provided for in said Act of 1937. The second cause of action alleges that the defendant, during the calendar year of 1938, operated certain mining property and mined gold therefrom to the value of $57,867.

It is alleged that a tax of 3 per cent of the value of the gold mined, over and above $10,000, during each said year is due the Territory, together with a penalty of 10 per cent and interest on the whole amount at the rate of 12 per cent per annum from March 15, 1938, on the first cause of action and from March 15, 1939, on the second cause of action.

The defendant has interposed a demurrer to each cause of action on the ground that it does not state facts sufficient to constitute a cause of action.

2. As to the subject of the act not being expressed in the title of Chapter 20, S.L.A.1937:

In 59 C.J., page 811, Sec. 393, we find the following: "The subject expressed in the title of the act fixes the limit of the valid scope of the act." "The provisions of an act must correspond with the subject expressed in its title, so nothing can validly be included in the body of a statute which is not expressed in or covered by the title, and all parts of an act which are not within its title are unconstitutional and void, even though such provisions might properly have been included in the act under a broader title."

Webster's International Dictionary, 1938 Edition, defines "mining" as follows: "Act or business of making or of working mines."

Giving to the word "mining" the meaning ascribed to it in the dictionary, we find the title of said act to be, "To provide for a tax on mines and the business of mining."

Considering the act as a licensing act, the part of the title referring to a tax on mines may be disregarded as surplusage, as there is nothing in the act providing for a tax upon mines. 59 C.J. 809, section 390.

The court is required to make a liberal construction of the title of the act. Wickersham v. Smith, 7 Alaska 522; Northern Commercial Company of Alaska v. Territory of Alaska, 9 Cir., 289 F. 786, 5 Alaska Fed. 166.

The rule requiring a strict construction of a tax act in favor of the taxpayer relates to the application of the statute and every tax law must be liberally construed to sustain its constitutionality.

Inasmuch as the word "tax" includes license taxes, the failure of the title to specifically state that it is as to a license tax would be immaterial as the use of the word "license" with "tax" would merely limit and not extend its scope.

Idaho Gold Dredging Co. et al. v. Balderston, Com'r of Law Enforcement, et al., 58 Idaho 692, 78 P.2d 105.

In Alaska Pacific Fisheries v. Territory of Alaska, 9 Cir., 236 F. 52, 4 Alaska Fed. 432, our Circuit Court of Appeals upheld the validity of Chapter 76, S.L.A.1915, which provided for licensing businesses and the subject of which was, "An Act to establish a system of taxation, create revenue, and provide for collection thereof. * * * "

It does not seem that any member of the Legislature or persons engaged in the business of mining would be misled as to the subject of the above-mentioned act, but, on the other hand, anyone would be notified by the title that the subject of the act is the licensing of the business of mining.

■■ 3. As to the objection that said Chapter 20 is a property tax and invalid as being over 1 per cent of the value of the property:

It is a well-established rule of statutory construction that the court will accept the construction which gives the act legality where that construction is possible, as well as another construction which makes the act invalid. Idaho Gold Dredging Co. et al. v. Balderston, Com'r of Law Enforcement, et al., 58 Idaho 692, 78 P.2d 105.

At all times since 1913, when Alaska was given a Territorial Legislature, there has been a license tax on the business of mining. Said Chapter 20, S.L.A.1937, repeals the former act requiring a license for the business of mining the same, being subsection 14 of section 3138, C.L.A.1933, as amended by Chapter 76, Session Laws of Alaska 1935.

To adopt the construction that said Chapter 20 is a property tax on mines would necessarily mean that the act was invalid, inasmuch as the Legislature is not authorized by our Organic Act to levy a property tax of more than 1 per cent of the value of the property. Section 475, C.L.A.1933, 48 U.S.C.A. § 79.

It would also mean that the Legislature had abandoned the policy of requiring a license tax on the business of min-

ing, which policy had been a settled one, continuously and consistently exercised since 1913.

It will not be presumed that the Legislature intended to abandon a well-established source of revenue unless the intention clearly appears. 59 C.J. 1095.

In Oliver Iron Mining Co. v. Lord, 262 U.S. 172, 43 S. Ct. 526, 528, 67 L.Ed. 929, the Supreme Court said: "The parties differ about the nature of the tax; the plaintiffs insisting it is a property tax, and the defendants that it is an occupation tax. Both treat the question as affecting the solution of the other contentions. * * * We think the tax in its essence is what the act calls it—an occupation tax. It is not laid on the land containing the ore, nor on the ore after removal, but on the business of mining the ore, which consists in severing it from its natural bed and bringing it to the surface where it can become an article of commerce and be utilized in the industrial arts. Mining is a well-recognized business, wherein capital and labor are extensively employed. This is particularly true in Minnesota. Obviously a tax laid on those who are engaged in that business, and laid on them solely because they are so engaged, * * * is an occupation tax. It does not differ materially from a tax on those who engage in manufacturing."

In Floyd et al. v. Miller Lumber Co. et al., 160 Ark. 17, 254 S.W. 450, 451, 32 A.L.R. 811, the court said:

"The constitutionality of the acts is first assailed, upon the ground that they impose a property tax on timber, because, it is argued, that any attempt to impose a tax on the only available use of a thing is, in effect, a tax upon the thing itself, and therefore a property tax. This test, invoked by learned counsel for appellees, was repudiated in the case of Ft. Smith v. Scruggs, 70 Ark. 549, 69 S.W. 679, 58 L.R.A. 921, 91 Am.St.Rep. 100; so said this court in the case of Standard Oil Co. of Louisiana v. Brodie, 153 Ark. 114, 239 S.W. 753. In the last case cited this court took occasion to say that:

584

" 'We are unwilling to subscribe unqualifiedly to the doctrine that a tax on the only available use of an article is, in every instance, a tax on the article itself.' * * *

"Following the lead of the Supreme Court and the trend of our own decisions, and for purposes of uniformity, a thing to be desired, a majority of the court, including the writer, have concluded that the tax imposed by the acts is a privilege and not a property tax. * * *"

In State v. State Board of Equalization, 93 Mont. 19, 17 P.2d 68, page 72, 18 P.2d 804, the court said: "The tax provided for by the act is not a property tax, but rather an occupation license tax. Mid-Northern Oil Co. v. Walker, 65 Mont. 414, 211 P. 353; Norum v. Ohio Oil Co., 83 Mont. 353, 272 P. 534. The state in effect says to the producers: Your operations deplete the natural resources of the state, and to the extent that you remove from the earth the natural wealth with which nature has provided it, and to that extent impoverish it, you are required to pay a license tax for the use and benefit of the state, for the privilege of extracting such natural wealth. The tax provided is not, therefore, on metals, minerals, or mine products, but rather upon the business of producing metals or precious stones, based upon annual production."

To much the same effect is Flynn, Welch & Yates v. State Tax Commission et al., 38 N.M. 131, 28 P.2d 889, on page 892.

In 40 C.J. 1141, section 791, the general rule is stated as follows: "Statutes imposing occupation or privilege taxes based upon the amount of the product mined are valid * * *. The fact that such a tax is based on tonnage does not make it a direct tax * * *."

If a tax is measured by the amount of business done, or the extent of privileges enjoyed by the taxpayer, irrespective of the value of the taxpayer's assets, it is an excise tax. A tax on the production of mines is an excise tax. 26 R.C. L. 35.

In Choctaw, O. & G. Railway Co. v. Harrison, 235 U.S. 292, 35 S.Ct. 27, 59 L.Ed. 234, the laws of Oklahoma entitled, "An Act providing for the levy and collection of a gross revenue tax from * * * persons * * * engaged in the mining or production of coal," were considered. Laws 1907–08, c. 71, art. 2. The act required a statement under oath from the operator, showing the amount of coal produced and the value thereof and required the payment of a tax of 2 per cent of the gross receipts from the total production. It was held that the Legislature, by giving the tax a particular name, did not take away the duty of the court to consider the real nature of the tax; that the tax was not levied on property owned on a given day, as is the general custom where ad valorem taxes are provided, but was manifestly to secure a percentage of sales in the method commonly pursued in respect to licenses and occupation taxes; that a tax on a merchant's or a miner's gross sales is not the same as a tax on his stock treated as property and that the above-mentioned act was not a property but a license tax.

In Alaska Pacific Fisheries v. Territory of Alaska, 9 Cir., 236 F. 52, 54, 4 Alaska Fed. 432, Chapter 76, S.L.A.1915, was considered. It was entitled, "An act to establish a system of taxation * * * ". It provided:

"Section 1. That any person * * * prosecuting * * * any of the following lines of business * * * shall * * * obtain a license * * * as follows: * * *

"6th. Fisheries: Salmon canneries, four cents per case on King and Reds or Sockeye; two cents per case on Medium Reds; one cent per case on all others. * * *

"8th. Fish Traps: Fixed or floating, one hundred dollars per annum. So called dummy traps included.

"9th. Gill Nets: One dollar per hundred fathoms or fraction thereof."

The defendant answered, setting up: " * * * (2) that the act was void because the tax attempted to be laid was not uniform upon the same class of subjects, in that it taxes fish traps· and gill nets, while seines are not taxed; * * * (4) that the tax imposed by the act cited is, in fact, a specific tax on property, and as such is levied without reference to the value of the property sought to be taxed, * * *."

The agreed statement of facts was that the defendant did not and could not use seines and was obliged to resort to fish traps and gill nets.

Held page 58 of 236 F: "Does it follow that, because the license tax imposed by the territorial Legislature is a measure creating revenue, it conflicts with that portion of ·section 9 of the Organic Act [Section 475, C.L.A.1933, 48 U.S.C.A. § 78] providing that:

" 'All taxes shall be uniform upon the same class of subjects and shall be levied and collected under general laws, and the assessment shall be according to the actual value thereof.' * * *

"Many well-considered cases might be cited holding that taxes which are levied on occupations * * * are not brought within the principle of equality and uniformity in the sense that the Legislature must make the taxation of all occupations or pursuits equal. * * * And it is well established that it is not an abuse of power if the burden of taxation is imposed equally upon all persons pursuing the same business or calling, provided, if there should be any division into classes, the basis of classification is reasonable and not merely arbitrary. * * *"

Page 59: "It is argued that the Legislature of Alaska ·did not have reference to the business of fishing with fish traps, as 'dummy traps' are classed with the others, and, as dummy traps cannot be used in fishing, it is said the Legislature intended to place a specific property tax on fish traps regardless of whether the traps were used ·in catching fish

or not. * * * If this construction of the territorial statute is the correct one, then it may be that the tax is not one on the business of fishing, but is upon the property used in such business. We are of opinion, however, that the broad rule of construction by which we are to ascertain the true intent of the Legislature does not allow this meaning to prevail. The act * * * by section 1 provides that any person 'prosecuting or attempting to prosecute any of the following lines of business * * * shall apply for * * * a license.' * * * Carrying on the 'line of business' of fish traps in Alaska * * * is understood to be fishing with fish traps. Hence the words should be given their ordinary meaning. · * * * But whatever may be the special use to which the dummy trap is put, the inclusion of it in the business of fishing with fish traps in no way shows any intent to tax fish traps as general property rather than to tax the business of fishing with traps."

Page 60: "Plaintiff in error says * * * the license tax is an unjust discrimination * * * in that * * * some * * * fisheries * * * are so situated that the supply of fish necessary * * * can be had only by the use of fish traps, while in some other places the operation can only be continued by using seines * * *. This contention is answered by recognition of the fact that the power of Congress is ample in the premises, and as it had the power to provide that all persons catching fish by means of fish traps should pay a certain license tax, and all persons catching fish by seines should pay a different tax, the power transferred is not to be held invalid.

"It is said that the plaintiff in error * * * having paid a tax on its output as required by the act of Congress of June 26, 1906 [48 U.S.C.A. § 230 et seq], should not now be required to pay a tax on the appliances used by it in connection with such business. The error of this argument rests in the assumption that the tax is a specific property tax, and therefore assessment of it must conform to the uniformity clause of the Organic Act. We cannot agree

that a license tax is to be held void for failure to comply with the requirement of uniformity upon the same class of subjects by basing the tax upon an assessment according to value. Nor do we think that the tax violates the provisions of the Constitution of the United States by any discrimination against salmon canneries or fisheries which use traps in favor of those using seines, or that it is to be held by the courts to be confiscatory in that it exacts in some cases a tax as high as ten per cent. * * * "

In Alaska Fish Salting & By-Products Company v. Smith, 255 U.S. page 44, 41 S.Ct. 219, page 220, 65 L.Ed. 489, 5 Alaska Fed. 20, the license taxing power of the Territory was considered, the court saying: "The legislature was warranted in treating the making of oil and fertilizer from herring as a different class of subjects from the making of the same from salmon offal. The provisions against taxing in excess of one per centum of the assessed valuation of property does not apply to a license tax like this. This is not a property tax. * * * "

In Pacific American Fisheries v. Territory of Alaska, 9 Cir., 2 F.2d 9, 5 Alaska Fed. 243, the license taxing act of the Territory of Alaska provided for a tax on king salmon, etc., at ten cents per case, with additional taxes per case of five cents where a cannery produced between ten thousand and twenty-five thousand, and of ten cents per case where the pack was from twenty-five thousand to forty-five thousand, and of fifteen cents per case where the pack was between forty thousand and fifty thousand, and of twenty cents per case where the pack was over fifty thousand. Our Circuit Court of Appeals held that the tax was not a property tax, but a license tax.

From a reading of the statute and from the above decisions, it is clear that Chapter 20, S.L.A.1937, in itself and as amended, imposes a license tax and not a property tax.

■■ 4. As to the tax being unjustly burdensome upon miners of gold and minerals of the platinum and palladium group and not being uniform:

It is true that said Chapter 20 imposes a license tax upon those engaged in the business of mining gold and minerals belonging to the platinum and palladium group of 3 per cent of the cash value of the gross production in excess of $10,000, whereas the license tax on those mining other minerals and metals is based upon the cash value of the net income of the mining operation and the tax is graduated from three-fourths of 1 per cent to a maximum of 8 per cent.

As set forth, in Alaska Pacific Fisheries v. Territory of Alaska, 9 Cir., 236 F. 52, 4 Alaska Fed. 432, the uniformity clause of our Organic Act (Section 475, C.L.A. 1933, 48 U.S.C.A. § 78,) does not apply to license taxes on business.

Chapter 101, section 1, subdivision eighth, Session Laws of Alaska 1923, amending Chapter 31 of the Laws of 1921, provided for a basic license tax on canneries of ten cents per case and additional taxes graduating upward as the production of the cannery increased.

In Pacific American Fisheries v. Territory of Alaska, 9 Cir., 2 F.2d 9, page 12, 5 Alaska Fed. 243, where the territorial license law placed a higher rate per case of salmon on the large canneries than on the small, the Circuit Court of Appeals held: "Nor are we able to agree with counsel for the plaintiff in error that the classifications contained in the act in question are so unreasonable and discriminatory as to render them void. As admitted by the attorney for the defendant in error, they undoubtedly discriminate in favor of small canneries and against the large ones. In Patton v. Brady, 184 U.S. 608, 623, 22 S.Ct. 493, 498 (46 L.Ed. 713), the Supreme Court said: 'It is not the province of the judiciary to inquire whether the excise is reasonable in amount, or in respect to the property to which it is applied. Those are matters in respect to which the legislative determination is final.' See Giozza v. Tiernan, 148 U.S. 657, 661, 662, 13 S.Ct. 721, 37 L.Ed. 599."

The same case was sustained in 269 U.S. 269, on page 278, 46 S.Ct. 110, on page 111, 70 L.Ed. 270, 5 Alaska Fed. 285, the court saying: "It is much pressed that the tax discriminates against large canneries in favor of small ones—this especially as contravening the Fifth Amendment and denying due process of law. Classification of taxes by the amount of the corpus taxed has been sustained in various connections heretofore. By way of specific answer it is pointed out' by the Attorney General of Alaska that the size of the run of salmon cannot be foreseen; that a cannery must be prepared to its full capacity; that there always will be an irreducible minimum of expense to be borne whatever the size of the pack; that therefore a small pack may mean a loss and a larger one a profit, and that on these considerations the law justly may attempt to proportion the tax to the probable gains. The inequalities of the tax are based upon intelligible grounds of policy and cannot be said to deny the petitioner its constitutional rights."

In Alaska Fish Salting & By-Products Company v. Smith, 255 U.S. 44, 41 S.Ct. 219, 65 L.Ed. 489, 5 Alaska Fed. 20, the license tax law of Alaska imposed a tax upon fish oil, fertilizer, and fish meal from herring, but did not impose any tax for the manufacture of the same from salmon or other fish.

The complainant alleged that the tax would confiscate plaintiff's business; that it unreasonably discriminated against the plaintiff; that it lacked uniformity and exceeded 1 per cent of the actual value of plaintiff's property.

Held page 48 at 255 U.S., page 220 of 41 S.Ct., 65 L.Ed. 489, 5 Alaska Fed. 20: "If Alaska deems it for its welfare to discourage the destruction of herring for manure and to preserve them for food for man or for salmon, and to that end imposes a greater tax upon that part of the plaintiff's industry than upon similar use of other fish or of the offal of salmon, it hardly can be said to be contravening a Constitution that has known protective tariffs for a hundred years. * * * Even if the tax should destroy a business it

would not be made invalid or require compensation upon that ground alone. * * * "

Page 50 of 255 U.S., page 220 of 41 S.Ct., 65 L.Ed. 489, 5 Alaska Fed. 20: "The legislature was warranted in treating the making of oil' and fertilizer from herring as a different class of subjects from the making of the same from salmon offal. The provisions against taxing in excess of one per centum of the assessed valuation of property does not apply to a license tax like this. This is not a property tax. * * * "

In Alaska Pacific Fisheries v. Territory of Alaska, 9 Cir., 236 F. 52, page 58, 4 Alaska Fed. 432, our Circuit Court of Appeals held:

That as Congress explicitly gave to the Territorial Legislature the right to impose license taxes on the carrying on of business, it is not subject to the restrictive limitations which control in levying taxes upon property in its usual sense. Many well-considered cases hold that taxes upon occupations and business are not required to be equal and uniform. It is held that it is not an abuse of power if the tax is imposed equally upon all persons pursuing the same business, provided, that if there be classes, the basis of classification is reasonable and not arbitrary.

It was further held to be reasonable to classify those fishing with traps and gill nets differently from those fishing with seines.

Inasmuch as fish in cans or traps or gill nets or seines are property in the full sense of the word, having been reduced to possession, it is believed the above-mentioned decisions as to the license tax on the business of fishing apply with equal force to the present case.

"As soon as fish are reduced to the possession of a fisherman, they are no longer the public property of the state, but all ownership passes to their possessor. He need not necessarily withdraw the fish from the water in order for his private ownership to attach, and, if he enclosed fish

in a net from which he may take them at his pleasure and it is practically, but not absolutely, impossible for them to escape, he acquires title in them." 11 R.C.L. 1016. Spring Valley Water-Works v. Schottler, 110 U.S. 347, 4 S.Ct. 48, 28 L.Ed. 173; State v. Shaw, 67 Ohio St. 157, 65 N.E. 875, 60 L.R.A. 481.

From the above decisions, it appears quite certain that the Legislature was not bound by the uniformity clause of our Organic Act in levying this license tax. Neither was the Legislature exceeding its powers in classifying a miner of gold differently from the miner of other minerals and metals. Consequently, Chapter 20, S.L.A.1937, is not invalid for lack of uniformity or as being unjustly discriminatory against gold miners.

5. As to Chapter 20, S.L.A.1937, being so vague and indefinite as to be inoperative and therefore void:

It is to be noted that said chapter fails in the following particulars as to the business of gold mining:

It gives no power to any officer of the Territory of Alaska to collect mining license fees.

It gives no power to any officer of the Territory of Alaska to issue a license to miners.

It provides no method for ascertaining the value of the output of mines in Alaska.

The Compiled Laws of Alaska of 1933 are merely a codification which is made prima facie the law. It was never adopted by the Legislature as the law.

Section 1, Chapter 31, S.L.A. 1921, provided for license taxes upon some nineteen businesses, including, in Subsection 20, the business of mining. This became Section 3138, subd. 14, C.L.A.1933.

Section 2 of said chapter provided that everyone wishing to engage in the lines of businesses mentioned in Section 1 should obtain a license from the Territorial Treasurer. He was required to file an application where the tax was not a fixed one; to agree to make a return to the

Treasurer before the 15th of the next January, showing the things necessary to fix the license tax. This section, without any amendments, became Section 3140, C.L.A.1933. The compilers of the Code erroneously made Section 3140 refer to Section 3139 (referring to bonds), instead of to Section 3138.

Chapter 20, S.L.A.1937, explicitly repealed Subsection 14 of Section 3138, mentioning the repeal in the subject of. the act, as well as in the body of it.

Plaintiff asserts that the court should overlook the plain language of the repeal above mentioned. It cites cases holding that, "Even words of absolute repeal may be qualified by the intention manifest in other parts of the same act." 59 C.J. 901, Section 502, and other cases.

But in the case at hand the Legislature did not manifest in other parts of Chapter 20, S.L.A.1937, any intention to fail to repeal Subsection 14 of Section 3138. The absolute expression of repeal is unqualified by any other manifest intention. The court must hold that said act effectively repealed Subsection 14 of Section 3138, C.L.A.1933.

Subsection 14, aforesaid, being eliminated from Section 3138, the provisions of 3140 no longer apply to any tax on mining, but apply only to the lines of business remaining within the specifications of Section 3138, C.L.A.1933, after the passage of Chapter 20, S.L.A.1937.

The general laws of the Territory of Alaska do not make it the duty of any officer to collect license taxes where the act creating the tax does not specifically impose the duty upon him. Section 3188, C.L.A.1933, prescribing the duties of the Treasurer, states that "(k) He shall perform other duties imposed upon him by law not inconsistent with the provisions of this chapter."

The Auditor of Alaska was the one to receive license fees and issue licenses in the cases of: Chiropractors (Chapter 14, S.L.A.1937); Insurance agents and brokers (Chapter 22, S.L.A.1937).

In all cases where a tax of any kind was imposed other than in Chapter 20, S.L.A.1937, it was specifically made the duty of some officer of the Territory to collect the tax and issue the license or receipt.

In 59 C.J. 618, section 176, the rule is stated: "Where there are no existing means and the act itself provides no sufficient means whereby it may be executed and its provisions carried into effect, it cannot be enforced; * * *." Citing many cases under note 78 supporting the text.

In Welch v. Dean et al. 49 Mont. 263, 141 P. 548, the Montana law required any person importing trees into the state to obtain a license to do business in the state, by paying the sum of $25 and filing with the State Horticulturist a bond in the sum of $1,000, conditioned to obey the laws of the state.

No provision was made as to whom the $25 should be paid and who should issue the license.

It was held that, as no one had the authority to accept the fee and issue the license, the plaintiff could not have procured a license, and to require him to have one as a condition precedent was denying him the right to do business altogether, and the act was held invalid.

In State ex rel. Wyatt v. Ashbrook, 154 Mo. 375, 55 S. W. 627 page 631, 48 L.R.A. 265, 77 Ann.St.Rep. 765, it is stated: "Whether the license provided for in the act is to issue and run for a day, month, or a year, or for life of the applicant, or for the duration of his business at a fixed place, nothing is to be found in the act to inform one; and again we are driven to the field of conjecture and speculation, without data upon which to predicate a construction as to what is meant. We know of no rule of construction that would justify this court giving to this act a definite meaning not somewhere disclosed or indicated within its four corners. The act is clearly void for uncertainty."

In re United States Fidelity & Guaranty Co., 178 La. 87, 150 So. 840, the law provided that any proceeding brought under that act should be tried summarily by a commissioner as is now or may hereafter be provided by law. There was no law for the appointment of a commissioner in cities under 50,000. Hence he could not be appointed in this case and the statute was inoperative.

In Re Maury et al., 97 Mont. 316, 34 P.2d 380, on page 384, the statute provided that, if a party appeared before the Industrial Accident Commission by attorney, the Commission should fix the attorney's fee. It was not provided as to who should pay the fee or out of what fund it should come, or whether it should be in favor of one litigant and against the other or not. Held, inoperative.

In Re Di Torio, D.C., 8 F.2d 279, 281, the act of Congress making it unlawful "to make a declaration of intention * * * on election day or during the period of thirty days preceding the day of holding any election in the jurisdiction of the court" 8 U.S.C.A. § 374, was considered. It was held that election includes special and general elections and, in some instances, primary elections; that jurisdiction could mean territorial jurisdiction or jurisdiction of the subject matter.

The act was held invalid, the court stating: "An act which is so uncertain that its meaning cannot be determined by any known rules of construction cannot be enforced. If no judicial certainty can be settled upon as to the meaning of a statute, the courts are not at liberty to supply one."

In People ex rel. Travis v. Rogier, 326 Ill. 310, 157 N.E. 177, 180, the court says: "Section 88 [Smith-Hurd Stats. c. 122, § 95] is so vague and uncertain in its terms and so incomplete in its provisions as to furnish no means of carrying into effect the purpose which it indicates. The purpose is manifest, but the section fails to provide any means for its accomplishment."

The present wording of said Chapter 20 indicated that the license tax is due only when a particular mine has been

mined out or abandoned. The act is inoperative as being vague and indefinite and not providing any means for the enforcement of the same.

6. As to the effect of the 1939 amendments:

(a) The Legislature amended Chapter 20, S.L.A.1937, at its next session, to wit, in 1939.

Chapter 54, S.L.A.1939, provided:

"Section 1. That Section 1 of Chapter 20, Session Laws of Alaska, 1937, be, and the same be amended by adding an additional paragraph at the end thereof which shall read as follows:

" 'Taxes upon royalties shall be paid by the person receiving same and no deduction or exemption is allowed thereon.' "

This was approved March 9, 1939, and became effective June 7, 1939.

Chapter 62, S.L.A.1939, gave the gold miner a $20,000 exemption instead of the $10,000 in the original act. It was approved March 9 and did not become effective until the 7th day of June, 1939.

Chapter 67, S.L.A.1939 was:

"An Act To amend Chapter 20, Session Laws of Alaska, 1937, the same being an Act entitled 'An Act to provide for a tax on mines and mining and to repeal Sub-section 14, of Section 3138 of the Compiled Laws of Alaska, 1933, as amended by Chapter 74, of the Session Laws of Alaska, 1935' by adding thereto Sections 3 and 4 providing for interest on unpaid license taxes and providing for liens; and declaring an emergency. * * *

"Section 1. That Chapter 20 of the Session Laws of Alaska, 1937, be, and the same is hereby amended by adding thereto the following sections, to be known as Sections 3 and 4:

"Section 3. All license taxes shall be due and payable on December 31st of each year and must be paid on or before January 15th following; provided, that the Treasurer shall have the power to extend such time until the fifteenth of the next ensuing March upon the special showing made by the licensee that such extension is necessary in order to enable him to ascertain the amount of taxes due, and it shall be the duty of the person, firm or corporation engaged in any of said lines of business to make a return under oath to the Treasurer on or before January fifteenth of each year, or, in case of an extension as above provided, on or before March fifteenth, setting forth the name of the licensee, the number of the license, and all the facts regarding the business necessary to enable the Treasurer to determine the amount of the tax to be paid, and all applications for renewals of such licenses shall be made on or before January fifteenth of the calendar year for which such renewal is made.

"In the event the tax is not paid before delinquency, such tax shall draw interest at six per centum per annum until paid.

"Section 4. All taxes levied or provided or accruing under the provisions of Chapter 20, Session Laws of Alaska, 1937, and the penalties and interest thereon, are hereby declared to be a lien prior, paramount and superior to all other liens, mortgages, hypothecations, conveyances and assignments, upon all the real and personal property of the person, firm or corporation liable therefor, and also upon all the real and personal property used with the permission of the owner thereof in prosecuting the business of mining in any of its branches; provided, however, that the special remedy provided for the recovery of license taxes, as herein set forth, shall not be deemed exclusive of any other remedy, civil or criminal, or both, now provided by law for the recovery of license taxes in the same manner as for the payment of any debt.

"Section 2. An emergency is hereby declared to exist and this Act shall be in force and effect immediately upon its passage and approval.

"Approved March 9, 1939."

(b) As the title of the last-mentioned act states that the contents of sections 3 and 4, added by it, provide for interest on unpaid license taxes and for liens, the question naturally arises as to whether or not such a title is broad enough to cover the subject of the act.

The act itself not only provides for liens and interest on unpaid license taxes, but makes the license tax on the gold miner an annual affair for each calendar year. It authorizes the Treasurer of the Territory to accept the license fee. It requires the miner to make a return under oath to the Treasurer on or before the 15th of January of each year, setting forth his name and all facts regarding the business necessary to enable the Treasurer to determine the amount of the tax to be paid.

However, as the act states it is an amendment to Chapter 20, S.L.A.1937, that was a sufficient designation of its subject. Stating the subject of the added sections was surplusage which may be disregarded. 59 C.J. 809, Section 389; 59 C.J. 859, Section 439.

(c) After adding Sections 3 and 4 by Chapter 67, S.L.A.1939, the indefiniteness of Chapter 20, S.L.A.1937, disappeared.

In Walsh v. State, 142 Ind. 357, 41 N.E. 65, 33 L.R.A. 392, the statute provided for salaries of all county officers except one. It was held unconstitutional as not being general. The next Legislature amended the act by putting in a salary for the omitted county officers. Then the act was held valid.

In 25 R.C.L. 906, the general rule is stated: "Where obnoxious features of a statute may be remedied by a proper amendment so that it can be held that had the law been

primarily so framed it would have been valid, it may be rendered valid by amendment, so far as the future operations may extend."

■ (d) As to the retrospective action of the 1939 amendments of Chapter 20, S.L.A.1937:

In Alaska Mexican Gold Mining Co. v. Territory of Alaska, 9 Cir., 236 F. 64, 4 Alaska Fed. 451, the license tax laws of Alaska on mining were involved.

Chapter 52, S.L.A.1913, required that any one attempting to prosecute the business of mining should apply for and obtain a license and pay for the same to the Clerk of the District Court of the Division where the mining was conducted. The mining license was one-half of 1 per cent on the net income over and above $5,000 per annum, and no provision was made for ascertaining the amount of the license fee due, nor any time fixed as the due date of the tax or.the duration of the license.

Chapter 76, S.L.A.1915, remedied the defects of the 1913 act by making provisions of the same nature as set forth in Chapter 67, S.L.A.1939, as to the mining license tax. It contained the statement that its provisions should not relieve anyone from the payment of any tax owing under the 1913 act, but that the tax, penalty, and interest should be collected and enforced as provided in the later act.

The Circuit Court of Appeals held:

Page 67 of 236 F.: "But the duty to pay having existed, remedy for the enforcement of the duty or obligation could be provided by legislation subsequent to the time when the duty arose; * * *."

Page 68: "It is settled that the grant of a new remedy in unequivocal terms, even though retroactive, is not necessarily void legislation."

In Alaska Consol. Canneries v. Territory of Alaska, 9 Cir., 16 F.2d 256, 5 Alaska Fed. 326, the cannery company took out a provisional license in January of 1923 and at the end of the year paid its tax upon the basis of the 1921 act

which had been in effect in January of 1923. The 1923 act increased the tax but made no reservation of any rights to license taxes which had arisen under former acts.

It was held that as the 1923 tax could not be fixed until the end of the year and although it was not passed until May 5, 1923, its schedule controlled for the entire calendar year of 1923, the Legislature having the power to levy a second tax if increased expenses made it necessary.

In 59 C.J., page 1174, we find: "The presumption against retrospective construction of statutes, as a general rule, does not apply to statutes that relate merely to remedies and modes of procedure."

In Cooley on Taxation, Third Edition:

Page 492: "Unless the constitution prohibits retrospective legislation, the basis of assessment of taxes may as lawfully be retrospective as the reverse; * * * ."

Page 494: "One may be taxed upon property which he has long ceased to own when the tax is levied. But there is commonly a presumption that any new tax law was not intended to reach back * * * . Such a supposition is in harmony with the general law which requires that the courts always 'construe statutes as prospective and not retrospective, unless constrained to the contrary course by the rigor of the phraseology.' "

In League v. Texas, 184 U.S. 156, 22 S.Ct. 475, 46 L.Ed. 478, the court held, as set forth in the syllabus:

"A State may adopt new remedies for the collection of taxes, and apply those remedies to taxes already delinquent, without any violation of the Federal Constitution. * * *

"A delinquent taxpayer who fails to discharge his obligation to the State, compelling it to go into court to enforce payment of the taxes due on his land, has no ground of complaint because he is charged with the ordinary fees and expenses of a law suit.

"The Fourteenth Amendment contains no prohibition of retrospective legislation as such, and therefore, now, as before, the mere fact that a statute is retroactive in its operation does not make it repugnant to the Federal Constitution."

In Stephens v. Cherokee Nation, etc., 174 U.S. 445, 19 S.Ct. 722, 43 L.Ed. 1041, the court said: "The statute conferring jurisdiction upon this court to consider and act upon this class of cases was intended to operate retrospectively, and is not thereby rendered void."

In Cook v. United States, 138 U.S. 157, 11 S.Ct. 268, 34 L.Ed. 906, the same rule as in Cooley on Taxation, Third Edition, as to interpreting law prospectively unless the wording requires a retrospective interpretation, was asserted. The court held, as set forth in the syllabus: "By the act of March 1, 1889 * * *, the intention of Congress to confer upon the Circuit Court of the United States in the Eastern District of Texas power to try defendants for the offence of murder, committed before its passage, where no prosecution had been commenced, was so clearly expressed as to take it out of the well settled rule that a statute should not be interpreted to have a retroactive operation where vested rights are injuriously affected by it; and it must be construed as operating retroactively."

In Sturges v. Carter, 114 U.S. 511, 5 S.Ct. 1014, 29 L. Ed. 240, a state statute gave the Auditor the right to inquire for four years back into the question of property which had not been listed for taxation and to make the correct assessment for those years. It was held that the statute gave no new right, but merely a new remedy to enforce a right which had existed all of the time and was not retroactive.

In Holthaus v. Adams County et al., 74 Neb. 861, 105 N. W. 632, it was held that the provisions of a new revenue law, changing the methods of procedure for the enforcement of delinquent taxes, were available for the collection of taxes delinquent prior to the time such revenue law went into effect.

There being no provision in the Organic Act of Alaska, or in the Constitution or laws of the United States prohibiting the Territory of Alaska from passing retrospective legislation, it would be valid.

(e) The matter to determine is whether or not the Legislature intended to make Chapter 20, S.L.A.1937, as amended in 1939, retrospective so as to cover license taxes for the years 1937 and 1938.

Chapter 54, S.L.A.1939, providing that taxes upon royalties should be paid by the person receiving the same, merely made what was already the law clearer, and the same, by its very nature, applied to any taxes on mining operations in 1937 and thereafter. It contained no emergency clause and needed none.

Chapter 62, S.L.A.1939, increased the exemption of mining from $10,000 to $20,000 without any emergency clause. It was approved March 9 and became effective June 7, 1939. It would affect the 1939 tax only.

Chapter 67, S.L.A.1939, carried an emergency clause, making it effective upon its approval, to wit, March 9, 1939. If it had been intended that this amendment, as well as the other two amendments, should affect only the license fee for the calendar year of 1939, the emergency clause would have been omitted as it was from the other two amendments.

If the view were taken that Chapter 67, S.L.A.1939, applied only to the 1939 tax and thereafter, the following results would obtain:

1. The plain provisions of Chapter 20, S.L.A.1937, imposing a tax, would be nullified for the calendar years 1937 and 1938.

2. The right of the Territory to a large amount of revenue would be relinquished.

3. The long-continued policy of requiring a revenue from the business of mining would be abandoned for two years.

4. The paragraph containing the emergency clause would be given no effect whatsoever, as the act has the same effect upon the licenses for 1939 with or without an emergency clause in the amending act.

5. A discrimination in favor of those in the mining business during the years of 1937 and 1938 as against those in the business from 1913 to 1936, inclusive, and 1939, and thereafter, would be made without any reason or difference of conditions.

If it be presumed that Chapter 67, S.L.A.1939, applies retroactively to license taxes for the year 1937 and thereafter, the situation is as follows:

1. Full effect is given to the emergency clause of that chapter.

2. Full effect is given to the provisions of Chapter 20, S.L.A.1937, imposing a tax upon the business of mining.

3. The revenue of the Territory from licenses for 1937 and 1938 would be saved.

4. The general policy of levying a tax upon the business of mining would be preserved without a break.

5. Those engaged in the business of mining for 1937 and 1938 would be given the same treatment as those in the business from 1913 to 1936, inclusive, and 1939 and thereafter,

In 59 C.J., page 1095, it is stated: "The provisions of the amendatory and amended acts are to be harmonized, if possible, so as to give effect to each, and leave no clause of either inoperative; and where an amendment is subject to two constructions * * * that is to be preferred which best harmonizes with the act amended. * * *" (Cases cited under note 3*). "It will not be presumed that the legislature intended to withdraw long established principles of law by an amendment, unless such intent clearly appears." (Case cited under note 9.)

In Alaska Consol. Canneries v. Territory of Alaska, 9 Cir., 16 F.2d 256, 5 Alaska Fed. 326, the laws of 1923 had

increased the amount of the license taxes on fishing by amending sections of the 1921 license tax law. It contained an emergency clause making the amendment effective upon its approval, to wit, May 5, 1923, but made no other mention as to the amendment being effective retrospectively.

The court held, page 257 of 16 F.2d:

"The plaintiff in error contends, * * * second, that the act of 1923 by its terms is not retroactive."

Page 258: "The second contention is equally without merit. In Pacific American Fisheries v. Territory of Alaska (C.C.A.) 2 F.2d 9 [5 Alaska Fed. 243], we held that certain canneries operating in Alaska during the year 1923 were subject to the tax imposed by the act passed in that year. Indeed, the identical question here presented was before the lower court in that case, because it was averred in one of the affirmative defenses that the license under which the defendant was then operating was applied for and granted prior to the passage of the act of 1923. * * * Of course there is a presumption that laws, and especially tax laws, will have a prospective operation only; but there is a like presumption that they are intended to operate uniformly and equally upon all, and in the end the question is one of legislative intent."

From the above it appears that Chapter 20, S.L.A.1937, as amended by Chapter 67, S.L.A.1939, is intended to and does act retroactively and affects license taxes on the business of gold mining for the calendar years of 1937 and 1938.

■■■ (f) When Chapter 67, S.L.A.1939, was passed, special provision could have been made requiring those engaged in mining in 1937 and 1938 to file a return and pay the tax due within a reasonable time. This was not done, however, but the general provision was made that the tax was due annually on the 31st of December and that the report should be made by January 15 of the following year. No distinction was made between the report required for 1937 and 1938 and 1939.

It is apparent, then, that the Legislature intended to place the mining operators for those years in the same category and to require reports from all of them between the 31st day of December, 1939, and the 15th day of January, 1940.

■■■ (g) As license taxes for gold mining during the calendar years of 1937 and 1938 are not due until January 15, 1940, such a defense would fall within the common-law classification of pleas in abatement. Such defenses, under Section 3421, C.L.A.1933, must be set forth in the answer.

7. Having treated all of the objections raised by the defendant in support of his demurrer and believing that there is no merit in them and having arrived at the conclusions above set forth, said demurrer should be overruled.